UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

No. 11-1792

UNITED STATES
Appellee

v.

BRIMA WURIE
Appellant

_____

**APPELLANT WURIE'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING THE GOVERNMENT'S MOTION TO CLARIFY THE JUDGMENT**

Appellant Brima Wurie respectfully moves that this Court reconsider its August 2, 2013 Order granting the Government's motion seeking clarification of the Court's May 17, 2013 judgment, for the reasons which follow:

1. On July 16, 2013, the Government filed a motion styled "Government's Motion to Clarify the Judgment," which requested the Court "clarify that the Court's judgment 'vacat[ing] [Wurie's] conviction'" did not apply to Count II of the Indictment.

2. On August 2, 2013, the Court granted the motion, noting it was "unopposed."

3. Undersigned counsel is chagrined to report he only became aware of the Government's July 16, 2013 motion on August 2, 2013, after reviewing the

1

Court's order.  Undersigned counsel's oversight in this regard is not excused but accounted for by the fact that the government's "Petition for Rehearing En Banc" was filed near simultaneously with the motion, and undersigned counsel did not notice that separate documents had been filed on that date.[1]

4.     For this reason, Defendant-Appellant Wurie respectfully requests the Court reconsider its August 2, 2013 order granting the motion, and allow him to oppose the government's motion, for the reasons which follow.

5.     In Defendant-Appellant Wurie's view, the original judgment did not require clarification.  In granting Wurie's appeal, the Court ordered: "The district court's denial of Brima Wurie's motion to suppress is reversed, his conviction is vacated, and the matter is remanded to the district court for further proceedings consistent with the opinion issued this day."  "Conviction" in this context is naturally interpreted as "conviction of [the three counts]."[2]  This was the correct ruling because the government's proof on Count II depended crucially on evidence obtained *after* the warrantless search of the cellphone.

6.     In its "Motion to Clarify the Judgment" the Government cited the last paragraph of Footnote 13 on Page 42 of its brief, which reads as follows:

---

[1] While there is reference to the Government's Motion in the Petition for Rehearing, undersigned counsel missed this too, in part because he did not review the document with sufficient care.

[2] It bears mention in this regard that the Court did not reach the sentencing issues, a further signal that it was not contemplating a remand for resentencing on Count II.

> Finally, it should be noted that, even if the Court were to reverse the district court's order denying Wurie's motion to suppress, which it should not, his conviction on Count Two, which charged him with distributing crack cocaine to Wade, remains valid. Proof of Wurie's guilt on the distribution charge was not based on evidence obtained from the search of his cell phone, but on the testimony of the officers who witnessed the transaction and questioned Wade afterward, and on the crack cocaine recovered from Wade's person immediately after his contact with Wurie.

7. But the Government's contention that "[p]roof of Wurie's guilt on the distribution charge was not based on evidence obtained from the search of his cell phone" was patently incorrect, which the Court's judgment granting a new trial on all counts recognized.

8. While some of the evidence for Count II[3] came before the search, by far the most important evidence that what transpired between Fred Wade and Brima Wurie was a drug deal with Wurie as the seller and Wade as the buyer was Wurie's connection to a "stash house" close by to where the transaction occurred.

9. In its Opening Statement the Government noted "the evidence in this case will start at 315 Silver Street," which it called the "home base for the defendant's drug dealing operation."  Tr. 2-23-2010 at 23.  The first witness to testify, Officer Kevin Jones, was not a witness to the street-level transaction, but to

---

[3] Count I charged Wurie with being a felon in possession of a firearm, specifically the firearm the was recovered at the apartment which was discovered as a result of the cell phone search; Count II charged Wurie with distribution of crack cocaine, specifically the cocaine which was found on the person of Fred Wade; Count III charged Wurie with possession with intent to distribute the crack cocaine also recovered from the apartment discovered as a result of the cell phone search.

3

the execution of the search warrant at 315 Silver Street that came later: he testified about the recovery of the firearm, the large cache of drugs, and drug dealing paraphernalia, including razor blades and plastic baggies cut in a distinctive way. This testimony provided the context for the testimony of the officer who witnessed the alleged street-level transaction, Paul Murphy, who testified next.

10. Paul Murphy testified about his observations of the meeting between Wade and Wurie. Murphy testified that he observed Wade waiting on a street near a parking lot in Andrew Square in South Boston. He observed Wurie pick up Wade in a white Nissan Altima. He followed the two in his own car as they drove a short distance, and returned to the place where Wurie picked up Wade. Murphy did not witness any hand-to-hand transaction. Although he testified he saw Wade "lift himself up [l]ike say I was trying to get something out of my pocket … lift himself off the seat … and turn[] towards Mr. Wurie," he testified he could not see either man's hands. Tr. 2-23-2010 at 150. He subsequently approached Wade, searched him, and recovered two portions of crack cocaine wrapped into the corners of plastic baggies. Tr. 2-24-2010 at 78.

11. The putative buyer, Wade, who had also been charged with possession with intent to distribute, was not called to testify about the origin of the drugs on his person, his relationship to Wurie, or any other subject. The government did not seek to elicit any of Wade's statements through Murphy. In fact, Murphy's

4

inferences about Wade's "role" in the September 5, 2007 transaction were stricken from the record on Wurie's counsel's objection. Tr. 2-24-2010 at 78. Murphy's testimony immediately following this sequence, that Wade was "buying drugs" from "Wurie," was *sua sponte* characterized as "opinion" testimony, evidently inadmissible, by the district court judge, who stated "[t]his is not necessarily a statement of fact. That's for the jury. This is his opinion." *Id.* Tr. 2-24-2010 at 78.

12.    The government's theory, that Wurie distributed drugs to Wade during this short ride, was crucially bolstered by the evidence connecting Wurie to a drug stash in a nearby apartment that was obtained as a result of the cell phone search. In its Closing Argument, the Government invited the jury to accept Murphy's interpretation of the sequence—that a drug deal had occurred between Wade and Wurie, with Wurie as seller—by arguing that Murphy was "*proved to be correct*" in his assessment *by the fruits of the search*, in particular the existence of the stash, the presence of an expensive "TV [and] computers," at the apartment, and the presence of plastic baggies which appeared to have been the very same ones used to package the drugs Wade had on his person. Tr. 2-25-2010 at 100-101 (italics supplied).

13.    The untainted evidence presented by the government regarding the transaction was insufficient to establish Wurie's guilt on Count II. And some

5

evidence supporting Wurie's guilt obtained prior to the cell phone search became probative only when considered in conjunction with tainted evidence, such as the corner cut baggies linking the drugs on Wade's person the Wurie's apartment, or the fact that Wurie stated at booking that he lived at an address in Dorchester, a claim which post-search evidence suggested was untrue.

14. Without the tainted evidence, the jury could not have concluded beyond a reasonable doubt that a drug transaction occurred with Wade as the seller and Wurie the buyer, as the evidence supported other interpretations, such as an aborted sale, with Wade the seller and Wurie a prospective buyer who rejected Wade's merchandize. Indeed, without the tainted evidence, a fair-minded jury could easily have concluded that what Murphy observed was not a drug transaction at all, but an innocent encounter.

15. Defendant-appellant suggests the Government's argument regarding Count II was not developed beyond a cursory statement in a footnote because familiarity with the record demonstrates that it is near frivolous to argue Wurie's conviction on Count II stands alone. The government relied heavily on tainted evidence to argue for conviction on Count II, and the jury's finding on that count cannot meaningfully be divorced from its findings on the other two counts. It is difficult to conceive of the government prevailing on an argument the error was harmless beyond a reasonable doubt as to Count II. *See Chapman v. California*,

386 U.S v. 18, 24 (1967); *United States v. Perez*, 353 F.3d 1, 19 (1st Cir. 2003) (noting the Court's reluctance "to make a *Chapman* determination based solely on the conclusory testimony of a non-participant [to a drug transaction].") Therefore, the Government's attempt to advance this argument under the guise of seeking clarification of the judgment should be rejected.

Wherefore, Defendant-Appellant requests that the Court reconsider its Order granting the Government's Motion to Clarify the Judgment, that the motion be denied, and that the Government's request in the alternative that the Court's vacatur of Count II be reconsidered also be denied.

                                            Respectfully submitted,

                                            /s/ Ian Gold
                                            Ian Gold, AFPD
                                            FEDERAL DEFENDER OFFICE
                                            51 Sleeper Street, 5th Floor
                                            Boston, MA 02210
                                            (617) 223-8061
                                            First Circuit No. 1131056

Dated: August 7, 2013                 Attorney for Appellant

<u>Certificate of Service</u>

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 7, 2013.

<u>/s/Ian Gold</u>
Ian Gold